UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————

GARY PETERS,

                Plaintiff,                Case No. 1:09-cv-14

v.                                                     Honorable Janet T. Neff

MARY BERGHUIS et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I. Factual allegations

Plaintiff Gary Peters presently is incarcerated with the Michigan Department of Corrections and housed at the Michigan Reformatory (RMI), though most of the actions he complains of occurred while he was housed at the E.C. Brooks Correctional Facility (LRF). He sues the following LRF employees: Warden Mary Berghuis, Deputy Warden Rick Smith, Grievance Coordinator Jeff W. Minnerick, and Nurse Tameria Hamilton.

The allegations of the complaint involve three different sets of allegations concerning denial of medical or dental treatment. The first set of allegations involves the denial of dental care. On approximately May 30, 2008, Plaintiff broke a tooth. On June 1, 2008, he submitted a Health Care Request seeking urgent dental treatment. In his request, he informed the medical department that the tooth had been repaired before, and he requested that the tooth be extracted because he "had no desire to undergo the continued treatment of repair." (Compl. at 2.) Plaintiff was seen in the dental clinic on June 26, 2008. Plaintiff told the dentist that the tooth had been repaired several times in the past, at least twice in 2006. Because of the discomfort of further treatment and the pain of a broken tooth, and because little of the original tooth remained, Plaintiff asked that the tooth be extracted. The dentist purportedly agreed that the tooth should be extracted but, because it would require oral surgery, she was not allowed to perform the procedure. She allegedly advised Plaintiff that, upon his release, he could have the tooth capped or removed. Plaintiff informed the dentist that he was serving a life sentence. The dentist then advised Plaintiff to go to the warden for approval of a cap or oral surgery. At this point, Plaintiff allowed the dentist to repair the tooth with a composite filling.

On July 3, 2008, the new filling fell out, leaving Plaintiff again with a broken tooth. Plaintiff informed the dental department that the filling had fallen out, but he stated that he did not want them to call him out again for treatment. Instead, Plaintiff submitted a request to Defendant Warden Berghuis, ostensibly in accordance with MICH. DEP'T OF CORR., Policy Directive 04.06.150,[1] seeking approval of either oral surgery or a cap. He submitted a second kite to Warden Berghuis on July 19, 2008. In his second request, Plaintiff informed the warden that he "was having minor pain caused by the broken tooth." (Compl. at 2.) He again requested that Warden Berghuis approve either the extraction of his tooth or the placement of a cap or crown. Plaintiff received no answer to either kite.

On August 6, 2008, Plaintiff submitted a grievance against Warden Berghuis, complaining about her failure to respond to his two requests for specialized dental treatment. On August 12, 2008, Defendant Minnerick called Plaintiff over to talk about the grievance and to determine what Plaintiff wanted. Plaintiff advised Minnerick that he wanted the tooth extracted or capped. Minnerick asked Plaintiff how he was going to pay for the services. Plaintiff informed Minnerick that, as a prisoner incarcerated for the past 31 years, he only had his wages from his prison job. Minnerick forwarded the grievance to the prison health department. Certified Dental Assistant B. Bacheller responded to the grievance. In her response, Bacheller stated that Plaintiff was treated on June 26, 2008, in accordance with policy. Plaintiff was informed that the filling was

---

[1] Policy Directive 04.06.150 addresses dental services at all MDOC institutions. The policy specifically states that routine dental services at all [Correctional Facilities Administration (CFA)] institutions includes "[m]inor oral surgery, including extraction of teeth beyond repair. Surgical cases beyond the scope of Department dentists shall be referred to specialists." MICH. DEP'T OF CORR., Policy Directive 04.06.150 ¶ K(1) (eff. Aug. 1, 2005). The policy states that "the following dental services shall not be provided by the Department: . . . [c]rown and bridge services (i.e., cast crowns, fixed partials, gold restorations, or other laboratory fabricated fixed restorations)." *Id.* at ¶ L(3). No part of the policy suggests that any particular treatment may or should be authorized by the warden.

large and that, if he ever got out of prison, he could have it crowned.  However, he was informed that the Department does not perform crowns, in accordance with P.D. 04.06.150.  He also was informed that the tooth currently did not need to be removed.  Plaintiff was advised to file a kite for a dental examination.  (Att. to Compl., docket #1-2 at 7.)  According to Bacheller's response, the department received a kite on July 7, 2008 about the failed repair, in which Plaintiff requested that the tooth be capped or crowned and stated that Plaintiff did not wish to be seen unless those services were to be performed.  A response to the kite informed Plaintiff that "[c]aps (crowns) are not done in the Department."  (*Id.*)  Plaintiff was informed that the department would not call him out for treatment unless he requested it.  Plaintiff also was notified of his right to request outside health services at his own expense under MICH. DEP'T OF CORR., Policy Directive 04.06.135.  Bacheller advised that the dental department had no comment on Plaintiff's request to the warden.  Plaintiff filed a second grievance on August 28, 2008, explaining that his grievance was against the warden, not against the dental department.  The grievance was rejected as vague, duplicative and untimely.  (Att. to Compl. at 6, 8.)

The second set of allegations involve Plaintiff's request for nasal spray to treat symptoms of sinus congestion.  On October 25, 2008, Plaintiff submitted a Health Care Request explaining his need for a nasal spray, stating that "because of the poor air quality in the housing unit and the lack of proper ventilation the air is dry and the amount of dust in the unit Plaintiff was finding it very hard to sleep because of sinus headaches and congestion pressure."  (Compl. at 3.)  Defendant Nurse Hamilton responded to the kite advising Plaintiff to take a variety of palliative measures:

> You need to increase your water intake to 10 - 12 cups of water per day, limit intake of products with caffeine.  Breath through a warm moist wash cloth, take a warm

> shower one [sic] or twice a day and splash water into the sinus passages. You may make a nasal [sic] using salt in water and splash into your nose. [P]lease use a pain medication from stores such as acetominophen, ibuprofen, etc. There are 2 types of allergy tablets available to try. Elevating your pillow by placing extra clothing under your pillow may make it easier to breath when you sleep.

(Att. to Compl., docket #1-2 at 11.) On October 30, 2008, Plaintiff sent another kite to Defendant Hamilton but received no response prior to his transfer to RMI on November 5, 2008. After examination by an RMI nurse on November 11, 2008 and an RMI doctor on December 5, 2008. Plaintiff ultimately was prescribed Flunisolid nasal spray and loratadine (the generic name for Claritin).

In his third set of allegations, Plaintiff complains about a denial of health care on December 19-20, 2008. At about 2:00 a.m. on that date, Plaintiff became ill. When he got up to go to the bathroom, he passed out and struck his head on the floor. Other prisoners turned Plaintiff on his side because he was choking and vomiting. Officer Morris was called. At 3:00 a.m., Plaintiff again became sick. While trying to make it to the bathroom, Plaintiff passed out in the day room and again vomited. Plaintiff alleges that officers did not make an entry about his condition in the log. Plaintiff completed a Health Care Request on December 20, 2008, but he was not seen until December 22, 2008. At that time, Nurse S. Thompson saw Plaintiff but allegedly took no vitals or history about his condition. On December 23, 2008, Plaintiff was again called to Health Service. He asked Nurse Thompson to return his copy of the Health Care Request. She informed him that she had thrown it out. She then conducted a full examination and logged the matter into the computer.

In addition to his three claims based on medical treatment, Plaintiff contends that his Eighth Amendment rights are violated by LRF's inadequate ventilation system. He alleges that

power is turned off in the cell block from 12:00 a.m. until 5:30 a.m., which prevents the use of cell fans, which he alleges are that "only real form of circulating the air in the cell . . . ." (Compl. at 7.) He alleges that the cell blocks are dusty, evidenced by large dust balls that can be seen. He references "ACA Standards" requiring at least 10 cubic feet of outside or recirculated filtered air per minute per human occupant. (Compl. at 8.) He asserts that ventilation at ECF is insufficient under those standards.

Finally, Plaintiff complains that his right to due process has been violated. Specifically, he alleges that he was deprived of due process when he was not provided with copies of his dental records, despite having paid for those copies. In addition, he alleges he was denied due process when Defendant Minnerick rejected his second grievance as vague, duplicative and untimely.

For relief, Plaintiff seeks declaratory and injunctive relief and monetary damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not

accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might

endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

### 1. Medical claims

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more

than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to

constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Plaintiff's allegations about his dental treatment fall far short of demonstrating deliberate indifference to a serious medical need. Plaintiff acknowledges that he received care for the tooth in question. He, however, was not satisfied with his treatment because his tooth needed to be filled on at least three prior occasions, twice in 2006, and once in 2008. According to his allegations, while the most recent filling lasted only one week, the prior treatment had lasted approximately two years. Plaintiff was unhappy that he was required to subject himself to the discomfort of repeated treatments and he therefore would have preferred to have the tooth either removed or capped. However, the decision to fill the tooth is precisely the sort of medical judgment that this Court declines to second-guess. *Westlake*, 537 F.2d at 860 n.5. Moreover, at no time does Plaintiff allege that he was in significant pain with his broken tooth or that the tooth was infected, abscessed or otherwise required urgent attention. Indeed, he described the pain from the broken tooth as "minor." (Compl. at 2.) Plaintiff therefore fails to demonstrate that his dental need is sufficiently serious to implicate the Eighth Amendment. *See Wilson v. Wilkinson*, 62 F. App'x 590 (6th Cir. 2003) (holding that a plaintiff with substantial dental problems who had received dental care on nine occasions in 21 months could not show Eighth Amendment violation where symptoms were neither urgent nor life-threatening in nature); *cf. McCarthy v. Place*, No. 07-3974, 2008 WL 5069039 (6th Cir. Dec. 2, 2008) (holding that a seven-month delay in extracting teeth and filling

others may violate the Eighth Amendment when the prisoner is complaining of serious pain during the entire period). Further, Defendants have at no time denied Plaintiff treatment – they have only denied Plaintiff's preferred form of treatment. Plaintiff at any time may avail himself of the option of having the tooth filled. The allegations, therefore, do not support a conclusion that Defendants were indifferent to Plaintiff's needs.

Plaintiff's allegations concerning his request for nasal spray are equally inconsequential. Although Plaintiff complains that Defendant Hamilton failed to treat him, the attachments to the complaint make clear that Plaintiff was given a variety of self-help suggestions to attempt before making an appointment with a physician. Such a course of action is a reasonable response to an initial complaint of sinus congestion. Nurse Hamilton also suggested that Plaintiff obtain one of the allergy medications available for purchase in the store. At RMI, before a doctor visit could be scheduled, Plaintiff was again advised to try one of the allergy medications available in the store, loratadine. While he appears never to have purchased the drug, loratadine was one of the medications ultimately prescribed for him by the RMI physician, a prescription Plaintiff now contends demonstrates that he had a serious medical condition that was ignored. The attached record reveals that, far from having been deliberately indifferent to his medical need, Hamilton offered practical advice that Plaintiff elected to ignore. Nor has Plaintiff alleged the sort of serious medical condition that would implicate the Eighth Amendment. Instead, Plaintiff describes a mild medical problem that caused him congestion and modest discomfort.

Finally, with respect to his claim of vomiting and illness on December 19-20, 2008, Plaintiff again fails to allege either a serious medical condition or that it was ignored. Plaintiff acknowledges that he was seen in health services on December 22, 2008. He does not allege that

- 11 -

he experienced serious avoidable pain or that his condition was aggravated by the two-day delay in seeing a doctor. *See Napier*, 238 F.3d at 743 9 (claim alleging Eighth Amendment violation based on delay in medical treatment requires evidence of a detrimental effect caused by the delay); *see also Cain v. Irvin*, 286 F. App'x 920, 926 (6th Cir. 2008). Plaintiff's claim about his treatment also fails because Plaintiff has named no Defendant who could be held responsible for the conduct. All Defendants named by Plaintiff were employed at LRF. Plaintiff was transferred from LRF to RMI on November 5, 2008. As a consequence, none of the named Defendants were responsible for events that occurred on December 19, 2008.

2. Denial of adequate ventilation

Plaintiff contends that he was deprived of his rights under the Eighth Amendment by the lack of adequate ventilation. Plaintiff bases his argument solely on certain referenced standards that recommend at least 10 cubic feet of outside or recirculated filtered air per minute per occupant.

Plaintiff's allegations fall far short of demonstrating "conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Plaintiff does not allege that Defendants fail to ventilate LRF at all, that temperatures are excessively high or low or that grave illness is being caused. Instead, as previously discussed, Plaintiff alleges that he has some minor sinus problems caused, in part, by inadequate ventilation. The allegations fail to show that "cell ventilation was so inadequate as to fall below 'the minimal civilized measure of life's necessities.'" *See Ingram v. Jewell*, 94 F. App'x 271, 272 (6th Cir. 2004) (quoting *Rhodes*, 452 U.S. at 347).

**B. Due Process**

Plaintiff alleges that he was deprived of his right to due process under the Fourteenth Amendment in two ways. First, he alleges that he paid for copies of a portion of his dental file but

- 12 -

that he never was given the copies.  Second, he alleges that Defendant Minnerick denied him due process by misconstruing his first grievance and rejecting his second grievance.

With respect to his claim based on his neglected copies, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B.  Alternatively, Michigan law authorizes actions in the Court of Claims

asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, he fails to state a claim based on the deprivation of his paid-for photocopies.

With respect to his second due process claim, Plaintiff's allegations again fail to state a claim. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

### C. State-Law Claims

At various points in his complaint, Plaintiff invokes state statutes and prison policies. Section 1983 does not provide redress for a violation of a state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Moreover, a defendant's failure to comply with an

administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687 at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). To the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998). Plaintiff's state-law claims will be dismissed without prejudice.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  February 3, 2009                             /s/ Janet T. Neff
                                                              Janet T. Neff
                                                              United States District Judge